**JACOBSEN v. JACOBSEN.**

No. 7845.

United States Court of Appeals for the
District of Columbia.

Argued Dec. 8, 1941.

Decided Feb. 16, 1942.

Mr. Robert E. Lynch, of Washington, D. C., with whom Elmer Cummins, of Washington, D. C., also entered an appearance, for appellant.

Mr. Joseph I. Cavanaugh, of Washington, D. C., with whom Charles L. Norris, of Washington, D. C., was, on the brief, for appellee.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

EDGERTON, Associate Justice.

This is an appeal from an order refusing to quash a writ of ne exeat and directing that it continue in force.

■ Appellant and appellee are husband and wife. They live apart under a decree of limited divorce, with alimony, which appellee obtained some years ago. On January 13, 1941, she filed against appellant the complaint which led to this appeal. She alleged that he had defaulted in alimony, and asked that he be adjudged in contempt. She also alleged that he was about to leave this jurisdiction to go to Nevada and asked, therefore, that a writ of ne exeat be issued to prevent him from leaving the jurisdiction of the court "pending a determination hereof." The court at once ordered appellant to show cause why he should not be adjudged in contempt, and directed the clerk to issue "the writ of Ne Exeat." The writ was issued and served, but is not in the record. Evidently it required appellant to remain in the District of Columbia,[1] and was not limited in time, by reference to the pending proceeding or otherwise.

Appellant first appeared "specially, for the purpose of this motion and none other," and moved to dismiss the complaint, discharge the order to show cause, and discharge the writ of ne exeat, all on the ground that he had returned to the District to answer a criminal charge and that, therefore, the court had no jurisdiction over him.[2] He filed an affidavit with his motion. Appellee, in an opposing affidavit, alleged that, on the contrary, appellant lived and worked here; and appellant, in a reply affidavit, said that he intended to remain here. On February 20, his motion to dismiss and discharge for lack of jurisdiction was overruled.

Thereafter, on February 28, appellant answered the complaint and the rule to show cause. At the same time, he moved for a rehearing of his "motion to discharge the writ of ne exeat for want of jurisdiction." But in the alternative, should his motion for rehearing be overruled, he now moved to quash the writ on the ground that the facts did not warrant its issuance.

The contempt charge was tried on February 28. Appellant was adjudged in contempt, committed to jail for 30 days, and immediately taken into custody. On March 31 the court, apparently without taking proof by testimony or deposition, overruled his motion to quash the writ of ne exeat along with his motion for a rehearing on the motion to dismiss. It ordered that the writ "continue in force."

■■ Expiration of appellant's sentence for contempt did not oblige the court to quash the writ, since arrears of alimony apparently remained unpaid. However, since the writ deprived appellant of his liberty, he was entitled to a prompt disposition of his motion to quash. This the court gave him. But since he had denied the allegations of the complaint, he was further entitled to a full hearing. A full hearing includes, of course, a full opportunity to introduce oral

---

[1] The Judicial Code provides that no writ of ne exeat shall be granted unless the defendant "designs quickly to depart from the United States." 28 U.S.C.A. § 376. But the District of Columbia Code authorizes the District Court to issue "writs of * * * ne exeat, and all other writs known in common law and equity practice that may be necessary to the effective exercise of its jurisdiction." D. C.Code (1929), Tit. 18, § 57; (1940) Tit. 11, § 11—315. It may be assumed for present purposes that the writ may be used, in a proper case, to thwart an intention to leave the District of Columbia for the purpose of defeating the court's jurisdiction in a pending suit. Murphy v. Paris, 57 App.D.C. 19, 16 F.2d 515.

[2] Cf. Church v. Church, 50 App.D.C. 239, 270 F. 361, 14 A.L.R. 769.

testimony.[3] If, as the record implies, appellant was given no such opportunity, continuing the writ in force deprived him of his liberty without due process of law, in violation of the Fifth Amendment.

If, at a hearing, appellant had offered no testimony whatever, it would nevertheless have been necessary to quash the writ unless appellee introduced substantial evidence in its support.[4] Appellee's sworn complaint contained, in substance, the necessary averment that appellant intended to leave the District of Columbia for the purpose of avoiding the court's jurisdiction. Appellee also alleged that appellant had previously stayed away from the District for the same reason. But in appellant's answer, he denied "that he remained out of the jurisdiction to defeat the decree of the Court or that he intends to leave the jurisdiction for the purpose of defeating the jurisdiction of this Court."[5] He also alleged facts tending to show that, contrary to the allegations of the complaint, he had frequently been available for service of process in the District; he had made no effort to avoid it; and his periods of absence were due to his efforts to earn a living. While appellee's sworn complaint would have been sufficient to warrant the ex parte issue of a temporary writ, with an order to show cause why it should not be extended, the complaint was not sufficient, without supporting proof, to sustain any writ in the face of appellant's answer and motion to quash. Appellee's disputed statements as to appellant's past conduct were not sufficient proof of a present intention, which he denied, to leave the District for the purpose of defeating the court's jurisdiction.[6]

Appellee urges that the order of March 31, from which this appeal is taken, was not a "final order" and therefore not appealable. Few orders are more final, since it undertook to confine appellant after judgment, and without limit of time, to the narrow limits of the District of Columbia. The finality of an order depends not upon its name, its propriety, or its normal function, but upon whether it "disposes of the whole case on its merits" so that the court has "nothing to do but to execute the judgment or decree * * * already rendered."[7]

Reversed.

---

[3] The New England Divisions Case (Akron, C. & Y. R. Co. v. United States), 261 U.S. 184, 200, 43 S.Ct. 270, 67 L. Ed. 605; Saunders v. Shaw, 244 U.S. 317, 37 S.Ct. 638, 61 L.Ed. 1163; Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 999, 82 L.Ed. 1129.

[4] Tegtmeyer et al. v. Tegtmeyer, 292 Ill.App. 434, 11 N.E.2d 657, 660; McPartland v. McPartland, 146 Misc. 674, 261 N.Y.S. 847.

[5] In an affidavit, he had stated that he was "permanently employed" by a local lumber company, "and that it is his intention and desire to remain in the District of Columbia and pursue his daily occupation."

[6] Friedland v. Isquith, 106 N.J.Eq. 344, 150 A. 840, 843.

[7] Bostwick v. Brinkerhoff, 106 U.S. 3, 1 S.Ct. 15, 16, 27 L.Ed. 73. Cf. Serkowich v. Wardell, 69 App.D.C. 389, 102 F.2d 253.