GREATER ANCHORAGE AREA BOR-
OUGH, a municipal corpora-
tion, Appellant,

v.

CITY OF ANCHORAGE and W. R.
Grasle Company, Appellees.

No. 1569.

Supreme Court of Alaska.

Dec. 29, 1972.

Sheila Gallagher, Borough Atty., and J. D. Cellars, Asst. Borough Atty., Anchorage, for appellant.

Harold W. Tobey and John R. Spencer, City Attys., Anchorage, for appellee, City of Anchorage.

Clyde C. Houston, Houston and Lytle, Anchorage, for appellee, W. R. Grasle Co.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

CONNOR, Justice.

This is an appeal from an order of the superior court referring a controversy besween the City of Anchorage [hereinafter referred to as the City] and the Greater Anchorage Area Borough [hereinafter re-

ferred to as the Borough] to the Alaska Public Utilities Commission [hereinafter referred to as PUC] for an administrative resolution.

The facts of the instant case are relatively simple. The City had a contract to provide electrical power to the Wagner Estates Subdivision, a real estate development located within the limits of the City. On October 13, 1969, the City applied to the Borough for a permit to install certain utility poles and power lines in a Borough right of way which runs along Aero Avenue, an arterial situated within the Spenard Service Area of the Borough. On October 27, 1969, the Borough's Public Works Director denied the City's application for a permit.

The City appealed the decision of the Public Works Director to the Borough Assembly on November 10, 1969. The appeal was denied.

On Saturday, November 22, 1969, the City disregarded the Borough's decisions and, through its contractor W. R. Grasle Company, commenced the unauthorized installation of utility poles within the Aero Avenue right of way.

On the same day, the Borough sought to curtail the City's construction activities and filed a complaint for injunction with the superior court. Later that day, the superior court issued a restraining order, enjoining the City and its contractor from further installation of the power lines.

At the hearing on permanent injunctive relief before the superior court on December 5, 1969, all three parties orally stipulated to a plan by which the City's power lines would be installed. A written stipulation to the same effect was filed with the superior court on December 8, 1969. With the signing of that written stipulation, the

outstanding restraining order was dissolved.

Believing the controversy over City construction work on Borough rights of way to be a continuing one, the parties in the same instrument further stipulated to submit the question of " . . . whether or not the Borough has the power to regulate construction along its road rights of way . . . " to the superior court on memoranda.

The case remained inactive until June 29, 1971, when the City and the Borough [1] filed a "Stipulation of Clarify Issue Submitted to Court." In that instrument, the two parties stipulated that the only question being submitted to the lower court was " . . . whether the Greater Anchorage Area Borough has the authority to regulate the use of rights of way outside the City Limits, including construction in those rights of way . . . . ."

The superior court handed down its written decision on July 20, 1971, in which the lower court declined to answer the stipulated question, but instead, " . . . ordered that the matter be referred to the Public Service Commission [2] for their determination."

The Borough appeals from the superior court's decision,[3] arguing that the PUC lacks jurisdiction to determine the stipulated question referred to it.

The City challenges the existence of appellate jurisdiction, contending that the lower court's referral order was an interlocutory one and not a final decree. The City reaches this position by maintaining that the superior court retained jurisdiction and referred to the PUC only a "facet" of the case: the narrower issue of duplication of service and facilities. The City alternatively argues that if appellate jurisdiction

1. Defendant W. R. Grasle Company, City's contractor, was not a party to the "Stipulation to Clarify Issue Submitted to Court."

2. In 1970 AS 42.05.010 was amended changing the name of the Public Service Commission to the Public Utilities Commission. Apparently, the superior court was referring to the commission by its earlier name.

3. Defendant W. R. Grasle Company did not join the Borough in the latter's appeal from the lower court's order.

exists, then the PUC possesses the requisite authority to determine the issue submitted to it, and that the superior court acted properly in referring the question to the PUC under the administrative law doctrine of "primary jurisdiction."

The Borough argues in reply that the question of duplication of service and facilities became moot with the parties' first stipulation, and that only the second stipulated question was referred to the PUC.

██ The first question presented to this court is whether appellate jurisdiction exists so as to permit review of the superior court's referral order. The existence of appellate jurisdiction in the instant case depends initially upon whether the lower court's decision constitutes a "final judgment" within the meaning of Rule 6 of the Alaska Supreme Court Rules.[4] Rule 6 enables a party to appeal to this court from a "final judgment" of a superior court. If the superior court's referral order is such a requisite "final judgment", then appellate jurisdiction exists and the parties are properly before this court.

The requirement that a lower court judgment be "final" before an appeal therefrom is permissible is not a novel rule in American jurisprudence.[5] A similar provision exists in the federal appellate scheme.[6] However, as Justice Black observed in Will v. United States,[7] the concept "final" is an "abstruse and infinitely uncertain term."[8] Thus, in order to ascertain whether the requirement of Rule 6 has been met in the instant case, it is first necessary for us to explicate the ambiguous concept "final."

██ Numerous definitions and tests of finality have been advanced by various courts in other jurisdictions.[9] The United States Supreme Court has declined to embrace a single, uniform formula. Rather, as Chief Justice Warren observed in Brown Shoe Co. v. United States:[10]

"The Court has adopted essentially practical tests for identifying those judgments which are, and those which are not, to be considered 'final.'" (Citations omitted.)[11]

The basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case, " . . . one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[12] Further, the reviewing court should look to the substance

---

4. Sup.Ct.R. 6 states:
 "An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil or criminal, except that the state shall have a right to appeal in criminal cases only to test the sufficiency of the indictment or on the ground that the sentence is too lenient."

5. Chief Justice Warren, in Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962), noted:
 "The requirement that a final judgment shall have been entered in a case by a lower court before a right of appeal attaches has an ancient history in federal practice, first appearing in the Judiciary Act of 1789. With occasional modifications, the requirement has remained a cornerstone of the structure of appeals in the federal courts." 370 U.S. at 306, 82 S.Ct. at 1513, 8 L.Ed. at 524. (Footnote omitted.)

6. 28 U.S.C. § 1291.

7. 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) (concurring opinion).

8. 389 U.S. at 108, 88 S.Ct. at 280, 19 L. Ed. at 318.

9. See, e. g., 9 J. Moore, Federal Practice ¶ 110.08[1] (2d ed. 1970).

10. 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962).

11. 370 U.S. at 306, 82 S.Ct. at 1513, 8 L. Ed.2d at 524.

12. Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911, 916 (1944). See also the formulation advanced by the Court of Appeals in City of Louisa v. Levi, 140 F.2d 512 (6th Cir. 1944):
 "A final judgment is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decree." 140 F.2d at 514.

and effect, rather than form, of the rendering court's judgment,[13] and focus primarily on the operational or "decretal" language therein.[14]

The relevant, operational portion of the superior court's referral order in the instant case is this:

> "My interpretation of the Chugach case leads me to believe that the Borough and the City should direct this matter to the PSC for determination. It is thus ordered that the matter be referred to the Public Service Commission for their determination."

Whether the order disposes of the entire case, however, depends on what "matter" the superior court meant to refer to the PUC.

The City argues that despite the previous settlement between the City and the Borough, and despite their submission of a carefully worded, stipulated question to the superior court, the "matter" referred to the PUC was only one "facet" of the entire case: " . . . the question of duplication of service and facilities to the subdivision . . . . " Having thus referred only a narrow aspect of the case to the PUC, the superior court, in the City's view, must have retained jurisdiction in order to subsequently decide the remaining stipulated question. Hence, the referral order would be interlocutory rather than final in nature, and under Rule 6, no appellate jurisdiction would exist.

The Borough contends on the other hand, that the initial dispute was settled with the parties' original stipulation, and that the only "matter" pending before the superior court at the time of its decision was the second stipulated question submitted on memoranda. Thus, the court could only have acted upon that stipulated question. By referring the sole remaining issue between the parties to the PUC for a determination, the lower court, in the Borough's view, completely and finally disposed of the entire case.

■■ We are persuaded that the Borough's interpretation of the superior court's referral order is correct. The parties had settled their original dispute over the installation of utility poles and power lines within the Aero Avenue right of way. The restraining order pertaining thereto was dissolved. That particular controversy became moot when the parties signed their original stipulation. Accordingly, the dispute was no longer pending before the superior court at the time of its decision. For the lower court to have ignored the parties' settlement and to have referred a moot question to the PUC for a fresh determination would have meant the unraveling of a private, working arrangement which had been in effect for some months. Certainly, this was not the superior court's intention. Sound judicial policy dictates that private settlements and stipulations between the parties are to be favored and should not be lightly set aside.[15]

See also the Court of Appeals' definition in Jacobsen v. Jacobsen, 75 U.S.App.D.C. 223, 126 F.2d 13 (1942):
"The finality of an order depends not upon its name, its propriety, or its normal function, but upon whether it 'disposes of the whose case on its merits' so that the court has 'nothing to do but to execute the judgment or decree * * * already rendered.'" 126 F.2d at 15. (Footnote omitted.)

13. Taylor v. Taylor, 153 Cal.2d 144, 314 P.2d 60 (1957); Price v. Slawter, 169 Cal.2d 448, 337 P.2d 914 (1959).

14. In McGhee v. Leitner, 41 F.Supp. 674 (W.D.Wis.1941), the court stated:

"The recital of facts in a decree is usual and proper, but the rights of the parties are adjudged not by the recital of facts, but solely by the decretal portion of the decree. It is this and this only that becomes the final judgment of the Court from which an appeal will lie." 41 F. Supp. at 676.

15. As the court in United States v. 133.79 Acres of Land, More or Less, in Sebastian County Arkansas, 313 F.Supp. 697 (W.D. Ark.1970), stated:
"The courts look with favor on stipulations designed to simplify, shorten or settle litigation, or save costs . . . and will not give a forced construction." 313 F.Supp. at 702.

With the parties' original conflict resolved by their first stipulation, the only remaining issue pending before the superior court at the time of its decision was the parties' second stipulated question. Thus, the "matter" which the lower court referred to the PUC was the question of " . . . whether the Greater Anchorage Area Borough has the authority to regulate the use of rights of way outside the city limits, including construction in those rights of way . . . ." We conclude that the substantial effect of the operational portion of the superior court's referral order was to completely dispose of the case pending before it.

Moreover, the superior court did not expressly retain jurisdiction in the case at bar. What the lower court said was:

> "The Court is not dodging its duty, merely allowing the statutory agency charged with this responsibility to employ its expertise and knowledge to the present situation. *Any appeal from their determination is not foreclosed by this decision*, but the Court should not at this stage attempt to bypass the statutory duty imposed on the PSC, and attempt to substitute its judgment for that of the said PSC." (Emphasis added.)

The superior court spoke in terms of "appeal" from the PUC's decision rather than "retained jurisdiction." Appealing to a court for the purpose of obtaining review of an inferior tribunal's order and returning to a court with retained jurisdiction for the purpose of continuing litigation are separate and distinct legal processes. In this case, the lower court was merely apprising the parties of their rights to seek judicial review of an administrative adjudication under the Alaska Administrative Procedure Act.[16] We conclude that the lower court did not mean to retain jurisdiction.

In view of our conclusions that the superior court meant to completely dispose of the sole remaining issue pending before it, and that it did not intend to retain jurisdiction, we hold that the lower court's decision of July 20 was a "final judgment" within the meaning of Rule 6. Accordingly, we hold that appellate jurisdiction exists in this case.

■ Having concluded that this court possesses the requisite authority with which to review the proceedings and judgment below, we turn next to the question of whether the superior court erred in referring the parties' second stipulated question to the PUC. The resolution of this issue, however, depends upon the nature and scope of the PUC's jurisdiction.

■ Under the so-called "doctrine of primary jurisdiction", a court may, in appropriate cases, stay or dismiss pending litigation so as to enable a proper agency to initially pass upon an aspect of the case calling for administrative expertise.[17] In

---

Similarly, in Burstein v. United States, 232 F.2d 19 (8th Cir. 1956) the court noted:

> "Valid stipulations are controlling and conclusive, and courts are bound to enforce such stipulations. Ordinarily courts have no power to make findings contrary to the terms of a stipulation." 232 F.2d at 22. (Citations omitted.)

*See also* Annot., 161 A.L.R. 1161, 1192 (1946).

16. AS 42.05.551(a) of the Alaska Public Utilities Commission Act expressly makes orders of the PUC subject to the provisions of the Alaska Administrative Procedure Act:

> "All final orders of the commission are subject to judicial review in accordance with AS 44.62.560–44.62.570 of the Administrative Procedure Act."

AS 44.62.560(a) provides in relevant part:

> "Judicial review by the superior court of a final administrative order may be had by filing a notice of appeal in accordance with the applicable rules of court governing appeals in civil matters. . . ."

17. *See generally* United States v. Western P. R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); Far East Conference v. United States, 342 U.S. 570, 72 S.Ct.

order for such a judicial reference to be valid, at least some part of the case must fall within the exclusive jurisdiction of the administrative agency.[18] The jurisdiction of the agency, in turn, depends upon the administrative authority conferred upon it by the relevant statutes.[19] Thus, the propriety of the superior court's referral order in the case at bar depends upon whether the Alaska Public Utilities Commission Act confers upon the PUC the jurisdiction to decide "whether the Greater Anchorage Area Borough has the authority to regulate the use of rights of way outside the city limits, including construction in those rights of way."

 The general powers and duties of the PUC are set forth in AS 42.05.141:

"Alaska Public Utilities Commission may

(1) regulate every public utility engaged or proposing to engage in such a business inside the state, except to the extent exempted by § 711 of this chapter and the powers of the commission shall be liberally construed to accomplish its stated purposes;

(2) investigate, upon complaint or upon its own motion, the rates, classi-fications, rules, regulations, practices, services and facilities of a public utility and hold hearings on them;

(3) make or require just, fair and reasonable rates, classifications, regulations, practices, services and facilities for a public utility;

(4) prescribe the system of accounts and regulate the service and safety of operations of a public utility;

(5) require a public utility to file reports and other information and data."

The essence of the administrative power conferred upon the PUC is regulatory; the Commission is empowered to set rates, promulgate regulations, collect information, process complaints against utilities and the like. The statutory framework, however, does not grant unlimited adjudicatory authority to the PUC. The agency is not empowered to decide disputes between municipalities over the control of construction activities within rights of way belonging to one of the disputants. The City's reliance on AS 42.05.221(d)[20] is misplaced, in that the "matter" which was referred to the PUC was not a question of duplication of

492, 96 L.Ed. 576 (1952); General Am. Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 442, 60 S.Ct. 325, 84 L.Ed. 361 (1940); 3 K. Davis, Administrative Law Treatise § 19.01 et seq. (1st ed. 1958).

18. The test is adequately set down by Professor Davis:
"(1) On the question whether the doctrine applies to problems of relief which are beyond administrative jurisdiction, the theory seems reasonably clear. The test is not whether some parts of the case are within the exclusive jurisdiction of the courts; the test is whether some parts of the case are within the exclusive jurisdiction of the agency." 3 K. Davis, Administrative Law Treatise § 19.07, 39 (1st ed. 1958).

19. As the Supreme Court of Washington observed in State v. Dept. of Transp. of Wash., 33 Wash.2d 448, 206 P.2d 456, 474–475 (1949):
"'* * * It is well settled in this state, as elsewhere, that a public service commission, . . . is an adminis-trative agency created by statute and as such has no inherent powers, but only such as have been expressly granted to it by the legislature or have, by implication, been conferred upon it as necessarily incident to the exercise of those powers expressly granted. [Citing cases and authorities.]'"
See also Civil Aeronautics Bd. v. Delta Air Lines, 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961); Fed. Trade Comm. v. Nat'l Lead Co., 352 U.S. 419, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957).

20. AS 42.05.221(d) pertains to "Certificates of Public Convenience and Necessity", and provides:
"(d) In an area where the commission determines that two or more public utilities are competing to furnish identical utility service and that this competition is not in the public interest, the commission shall take appropriate action to eliminate the competition and any undesirable duplication of facilities. This appropriate action may include, but is not limited to, ordering the com-

electrical services or facilities and did not involve the interpretation of a utility's certificate of public convenience and necessity. Further, the controversy in the instant case does not involve competing utilities seeking to provide the same service to a single consumer. By stipulation, the dispute concerns the Borough's authority to control construction work and other activities which take place within the Borough's rights of way. In short, the Alaska Public Utilities Commission Act simply does not contemplate the establishment of an administrative body with the authority to adjudicate such disputes.

Moreover, Chugach Electric Association v. City of Anchorage [21] does not command a contrary result. Both the superior court [22] and the City mistakenly interpret and apply our decision in that case. In *Chugach,* the City provided electrical service to a bowling alley. The bowling alley, however, requested Chugach (a nonprofit electric cooperative) to provide the same utility service. The bowling alley was located within both the city limits and the service area as described in Chugach's certificate of public convenience and necessity issued by the PSC. Chugach commenced installation of power lines, applying for a permit under a city ordinance some time after the initiation of the construction work. The permit was refused since the City believed it could adequately provide the electrical service. The City later obtained a permanent injunction, enjoining Chugach from serving the area. On appeal, this court held that the City could not deny Chugach the right to provide electrical service to the bowling alley.

*Chugach* and the instant case are distinguishable. In *Chugach,* the underlying legal controversy was a conflict between state statutes and a municipal ordinance.[23] Here, no such conflict exists. Rather, the controversy submitted to the superior court and referred to the PUC in the instant case concerns only the regulation of construction activities within a right of way.

*Chugach* involved the problem of the duplication of service and facilities by competing utilities to a single consumer located within a common service area. Here, there is no dispute over any duplicative provision of services. Nor is the customer located within a common service area. The consumer is located within the City limits and has contracted only with the City for the provision of electrical services. Further, two utilities are not in competition with each other in the instant case. The only dispute in the present action is over the control of construction work within the Borough's right of way.

In *Chugach* the superior court did not refer any controversy to a state agency for

peting utilities to enter into a contract which, among other things would:

(1) delineate the service area boundaries of each in those areas of competition;

(2) eliminate existing duplication and paralleling to the fullest reasonable extent;

(3) preclude future duplication and paralleling;

(4) provide for the exchange of customers and facilities for the purposes of providing better public service and of eliminating duplication and paralleling; and

(5) provide such other mutually equitable arrangements as would be in the public interest."

21. 476 P.2d 115 (Alaska 1970).

22. Specifically, the superior court stated: "It appears to me, however, that the instant case may be decided by an application of the holding in the Chugach v. City case decided by our Supreme Court, hereinabove referred to. . . .

My interpretation of the Chugach case leads me to believe that the Borough and the City should direct this matter to the PSC for determination. It is thus ordered that the matter be referred to the Public Service Commission for their determination. . . ."

23. In *Chugach*, this court stated: "At the outset it should be made clear that we approach a resolution to this problem by construing it as a conflict between the application of the municipal ordinance and the pertinent state statutes which vest power in the *psc*, rather than a situation where the state has implicitly preempted the entire field." 476 P.2d at 121.

determination. Rather, the state's only involvement in that case was through the PSC certificate of public convenience and necessity held by Chugach. There, this court merely interpreted the effect of an existing certificate in the context of conflicting statutes and ordinances. Here, the superior court expressly referred the parties' second stipulated question to the PUC. Contrary to the City's contention, *Chugach* does not stand for the broad proposition that " . . . the PUC has 'primary jurisdiction' over certain questions involving electrical service." Rather, this court's opinion in *Chugach* must be confined to the specific facts and particular legal issues in that case, and any broader implications must be disavowed.

In view of our conclusions that the Alaska Public Utilities Commission Act does not confer broad adjudicatory jurisdiction upon the PUC, and that *Chugach* does not compel a contrary result, we hold that the PUC lacks authority to decide the parties' second stipulated question. Accordingly, the superior court's referral order was erroneous.

■ Our holding that the PUC lacks jurisdiction to decide the parties' stipulated inquiry, however, does not necessarily compel the superior court to decide the question. That is, we interpret the parties' submission of the stipulated question to the lower court to be substantially in the nature of an application for declaratory relief. Their original dispute was settled with the signing of the first stipulation and the subsequent dissolution of the restraining order. The City and the Borough, however, apparently feared " . . . that the dis-

pute over rights of way was a continuing one. . . . " Accordingly, they drafted, clarified and submitted to the superior court the stipulated question. With the foregoing modification of their original action, the parties effectively transformed their lawsuit into a declaratory judgment action.

■ Not all issues raised in applications for declaratory relief are justiciable. In order for such questions to be appropriate for adjudication, they must present an "actual controversy." While Article IV, section 1 of the Alaska Constitution [24] and AS 22.10.020(a) [25] define the general jurisdiction of the superior court, AS 22.10.020(b) sets forth the specific requirements for jurisdiction in a declaratory judgment action, particularly the "actual controversy" criterion.

"(b) In case of an actual controversy within the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought. The declaration has the force and effect of a final judgment or decree and is reviewable as such. Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against an adverse party whose rights have been determined by the judgment."

■ In Jefferson v. Asplund,[26] this court interpreted the Alaska Declaratory Judgment Act and stressed the need for the existence of an "actual controversy"[27]

24. Article IV, section 1 provides:
"The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature. The jurisdiction of courts shall be prescribed by law. The courts shall constitute a unified judicial system for operation and administration. Judicial districts shall be established by law."

25. AS 22.10.020(a) provides in part:
"The superior court is the trial court

of general jurisdiction, with original jurisdiction in all civil and criminal matters, . . . ."

26. 458 P.2d 995 (Alaska 1969).

27. In Jefferson v. Asplund, this court adopted Chief Justice Hughes' definition of the concept of "controversy" from Aetna Life Insurance Company v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937):
" . . . The controversy must be definite and concrete, touching the legal

in any request for declaratory relief. Specifically, we noted that

"Both Alaska's Declaratory Judgment Act and the federal act require a 'case of . . . actual controversy' as a prerequisite to the grant of declaratory relief."[28]

Parties seeking a judicial determination of a hypothetical, advisory or moot question will be denied declaratory relief. As we said in *Jefferson*:

"It follows that declaratory relief will be withheld when declarations are sought concerning hypothetical or advisory questions or moot questions." (Footnotes omitted.)[29]

Thus, the justiciability of the second stipulated question in the instant case depends upon whether such inquiry concerns an "actual controversy" or merely presents a hypothetical question calling for an advisory opinion.

In *Jefferson*, this court observed that a federal court's exercise of judicial discretion in an action brought under the federal Declaratory Judgment Act was subject to review.[30] We further noted, without comment, Professor Moore's interpretation of the proper scope and nature of appellate review in declaratory judgment actions:

". . . [I]n reviewing the trial court's exercise of discretion to grant or refuse declaratory relief, a sound position is that the appellate court may substitute its judgment for that of the lower court. The determination of the trial court may, therefore, be reversed where, though not arbitrary or capricious, it was nevertheless erroneous. This view of the appellate court's power to review

and reverse the action of the trial court in respect to its discretionary power to grant or refuse declaratory relief permits greater uniformity than would otherwise be possible." (Footnote omitted.)[31]

 In the case at bar, the superior court made no determination regarding the second stipulated question or the requested declaratory relief. Additionally, the parties have not clearly demonstrated nor does the instant record disclose how the litigants' ". . . dispute over the control of rights of way was a continuing one . . . ."; or how the stipulated question involved an "actual controversy." Under such circumstances, we decline to advance our own view as to whether the stipulated question submitted in the present case involves the requisite "actual controversy." We further decline to substitute our own judgment for that of the lower court's on the issue of whether the requested declaratory relief should be granted or refused. Rather, we agree with Professor Borchard that a sound disposition of an appeal in a declaratory judgment action containing an insufficient record is to remand the case for further pleading and evidence.

"Perhaps it goes without saying that normally on appeal the whole case is before the appellate tribunal, even though the appellant excepts to only a part of the judgment below. All the facts as developed by the pleadings and evidence are before the appellate court and it may and should exercise its independent judgment on the propriety of granting declaratory relief. And the appellate court has a free hand in granting such judg-

---

relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." 458 P.2d at 999. (Footnote omitted.)

We acknowledged however, that "[t]he difference between an abstract question

and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree. . . ." 458 P.2d at 999 n. 20.

28. 458 P.2d at 998.

29. *Id.* at 999.

30. *Id.* at 998.

31. *Id.*

ment as it considers proper, instead of reversing for some minor error. *It may, however, remand the case for further pleading and evidence if it considers the record insufficient for a reasoned judgment,* and may consider errors not apparent in the record." (Emphasis added.) [32]

Accordingly, we reverse the referral order of the superior court and remand the action for further proceedings consistent with this opinion.

Reversed and remanded.

RABINOWITZ, Chief Justice (concurring in part, dissenting in part).

While I agree that under Alaska Supreme Court Rule 6 this court has appellate jurisdiction, I disagree with the majority's disposition of the case. In my view the record fails to establish the existence of an actual controversy. I would therefore vacate the superior court's judgment and remand with instructions to dismiss.

In 1969, the Borough instituted an action seeking to resolve a dispute involving the right to regulate certain electrical power-line construction activity along its Aero Avenue right of way. On December 8, 1969, the parties stipulated to a settlement of the Aero Avenue dispute. This stipulation also attempted to reserve for judicial decision the question of whether "the Borough has the power to regulate construction along its road rights of way." In my opinion this stipulation mooted the 1969 action, since the parties agreed to abide by the settlement "regardless of the outcome" of the reserved question.

In June 1971, the parties filed with the superior court a document entitled "Stipulation to Clarify An Issue Submitted to Court." Apparently referring to the ques-

tion "reserved" in 1969, this stipulation sought to raise the issue of "whether the [Borough] has the authority to regulate the use of rights of way outside the city limits, including construction in those rights of way . . . ." I agree with the majority that we may construe this 1971 stipulation as an attempt to commence an action for declaratory relief under Alaska Civil Rule 51(a) and AS 22.10.-020(b). On the other hand, in Jefferson v. Asplund,[1] we noted that Alaska's Declaratory Judgment Act requires a case of actual controversy as a prerequisite to the grant of declaratory relief.[2] There we approved Chief Justice Hughes' definition of justiciable controversy which provided in part that

'A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of of facts.' [3]

Though the 1971 stipulation can be construed as an attempt to commence a declaratory judgment action, the parties are not relieved from *Jefferson's* requirement of

a simple statement of facts demonstrating that the superior court has jurisdiction and that an actual justiciable case or controversy is presented. (Footnote omitted.) [4]

In the case at bar the parties have made no effort to show that they are currently involved in a disagreement over power-line

32. E. Borchard, Declaratory Judgments 253–54 (2d ed. 1941).

1. 458 P.2d 995 (Alaska 1969).

2. *Id.* at 998.

3. *Id.* at 998–999, quoting from Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617, 621 (1937).

4. 458 P.2d at 999.

construction work within Borough rights of way. Nor have they shown the frequency with which such disputes have occurred in the past, or the likelihood that their recurrence is imminent. The only fact the parties have clearly established is that they are not now engaged in any such road right of way construction controversy. Since the record before us does not demonstrate the existence of an actual controversy, I would dismiss the declaratory relief action.[5]

5. We have noted that Alaska's Declaratory Judgment Act is patterned on the federal act. Jefferson v. Asplund, 458 P.2d 995–996. The United States Supreme Court has dismissed declaratory judgment actions under the federal act when the record did not demonstrate the existence of an actual controversy, without first remanding to the trial court for further proceedings. *E. g.*, International Longshoremen's Union v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954).