BOLGER, Chief Justice.
I. INTRODUCTION
An individual brought civil claims against the prosecutors who secured his convictions for assault and resisting arrest, alleging that they committed various torts and violated his constitutional right to due process. The superior court dismissed his state and federal claims, concluding that the prosecutors enjoyed absolute immunity. We agree that the prosecutors are protected by absolute immunity from both the state and federal claims because they were acting in their official capacity as advocates for the State when they committed the acts that gave rise to the complaint. Accordingly we affirm the superior court's dismissal of the claims against them.
II. FACTS AND PROCEEDINGS
Randell Jackson was charged with disorderly conduct, assault, and resisting arrest after a 2012 interaction with three police officers in Haines. Amy Williams, an assistant district attorney, first prosecuted Jackson on these charges, but her efforts resulted in a mistrial. James Scott, the Juneau district attorney, oversaw the second round of proceedings against Jackson, which led to his conviction and sentencing. Jackson appealed his convictions in March 2016 to the superior court, which reversed his conviction for disorderly conduct but affirmed his assault and resisting arrest convictions.
On September 4, 2014, Jackson[1] filed a civil complaint against Scott, Williams, various police officers and state employees involved in his arrest and prosecution, and the Borough of Haines.[2] He brought several constitutional *927 claims under 42 U.S.C. § 1983[3] and tort claims under state law. He alleged that the arresting officers provided false testimony at his trial, that Scott and Williams refused or neglected to prevent the presentation of this false testimony, that they knowingly or recklessly used this false testimony to convict Jackson, that Williams "made an illegal request for a bench warrant to be issued against [a] defense witness," that Williams "advised and strategized" with the police department regarding Jackson's prosecution, and that Scott "made misrepresentative statement[s] using ethos, speculation and experimentation instead of evidence to wrongfully convict Jackson." Jackson sought recovery for malicious prosecution, malicious abuse of process, conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and the violation of various rights established by the federal constitution.
Jackson then moved to stay his civil case until his criminal appeal was resolved. While the court was considering the stay motion, Scott and Williams moved to dismiss Jackson's claims against them under Alaska Civil Rule 12(b)(6).[4] They argued that "[i]t is well-settled that absolute immunity bars claims for monetary damages against prosecutors when acting in their roles as advocates" and that the conduct challenged in Jackson's complaint "fall[s] squarely within the scope of ... Scott's and ... Williams' absolute immunity as prosecutors."
The superior court granted both Jackson's and the prosecutors' motions in September 2015. Regarding the motion to dismiss, it explained that "all of Mr. Jackson's claims against ... Scott and ... Williams arose after the criminal complaint was filed as part of his criminal prosecution. Thus Mr. Jackson's allegations against [them] involve activities intimately associated with the judicial phase of Mr. Jackson's criminal prosecution." Accordingly the superior court found that Scott and Williams were "entitled to absolute prosecutorial immunity."
Jackson's criminal appeal concluded in March 2016, and the superior court dissolved the stay in his civil action in September 2017. In October Jackson moved to continue the stay until he had exhausted all of his post-conviction remedies, but the superior court eventually denied this motion. Upon the motion of the prosecutors, the superior court entered judgment in their favor under Alaska Civil Rule 54(b)[5] in December 2017.[6] The superior court also awarded the prosecutors an attorney's fee award of $ 4,311.87, calculated under Alaska Civil Rule 82(b)(2).[7] Jackson appeals.[8]
III. DISCUSSION
Jackson raises a number of issues on appeal. He challenges the superior court's dismissal of his claims against the prosecutors under Rule 12(b)(6) and the attorney's fees awarded to them. Jackson also argues that the superior court erred by denying his motion to continue the stay of his civil case and *928 by denying his motion for default judgment against the Borough of Haines. Finally, Jackson challenges the validity of his underlying criminal convictions.
A. It Was Not Error For The Superior Court To Dismiss Jackson's Claims On The Basis Of Absolute Immunity .
"A complaint is subject to dismissal under Civil Rule 12(b)(6) 'when its allegations indicate the existence of an affirmative defense, but the defense must clearly appear on the face of the pleading.' "[9] Jackson's complaint asserted claims for relief under both federal and Alaska law. The superior court applied the same reasoning to Jackson's state and federal claims: that prosecutors are entitled to an affirmative defense of absolute immunity for "acts intimately associated with the judicial phase of the criminal process," and that the conduct that gave rise to Jackson's complaint occurred within that phase. "We review decisions granting or denying motions to dismiss de novo."[10] "The applicability of both state and federal immunity are questions of law that are also subject to de novo review."[11]
1. The affirmative defense of absolute prosecutorial immunity is available under both federal and state law.
The United States Supreme Court has long held that prosecutors enjoy absolute immunity from claims brought under § 1983, the statute which authorized Jackson's federal claims, when performing acts "intimately associated with the judicial phase of the criminal process."[12] But we have not yet decided whether prosecutors may assert an absolute immunity defense against state-law causes of action, like Jackson's malicious prosecution and conspiracy claims.[13]
In Imbler v. Pachtman , the U.S. Supreme Court concluded that prosecutors were entitled to absolute immunity from § 1983 claims.[14] The Court determined that the nature of the prosecutor's role requires the "exercise [of] his best judgment both in deciding which suits to bring and in conducting them in court" and that "[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages."[15] The Court also reasoned that, absent absolute immunity, suits for damages "could be expected with some frequency," which would divert the prosecutor's "energy and attention ... from the pressing duty of enforcing the criminal law."[16] The Court concluded that these considerations outweighed the fact that absolute prosecutorial immunity would "leave the genuinely wronged defendant without civil redress."[17]
We find this reasoning persuasive. Prosecutors perform an indispensable role in the *929 administration of justice and the maintenance of public safety. Their job requires them to make decisions about how and when to prosecute, and which cases to bring in order to best serve the public good. Exposure to civil liability for their decisions could affect prosecutors' judgment, eroding public trust in the office and hampering their ability to pursue cases in the public's interest.[18]
Moreover, liability in tort for claims like malicious prosecution would require an inquiry into a prosecutor's motives.[19] This is a question of fact, the determination of which would likely require a trial.[20] Even if such claims were relatively infrequent, the burden of defending them in what could be lengthy or complex proceedings would detract from the prosecutor's ability to fulfill the duties of his or her office.[21]
A rule of absolute prosecutorial immunity may leave injured parties with no meaningful alternative remedies or avenues for relief. But the importance of the office and threat that its efficacy will be eroded by defensive litigation outweigh this concern.
Jackson questions whether "a certain class of people" should be "above the constitutional rules of law." But he does not argue that a different analysis of the immunity defense should be applied as a matter of state law.
We thus join the U.S. Supreme Court and the majority of other states[22] in holding that prosecutors are entitled to absolute immunity from tort claims when acting in their role as advocates for the State.
2. The prosecutors are entitled to assert absolute immunity because they were acting in their roles as advocates of the State.
Having determined that absolute immunity is available to the prosecutors as an affirmative defense to state-law claims, we must now decide whether they are entitled to assert it in this case. The focus of this inquiry is on the nature of the conduct that gave rise to Jackson's claims. Prosecutors enjoy absolute immunity when performing acts "intimately associated with the judicial phase of the criminal process."[23] The U.S. Supreme Court has explained that absolute immunity protects actions taken in the capacity of an advocate, but not necessarily "investigative or administrative tasks."[24]
The superior court found that Scott and Williams were entitled to an absolute immunity defense because all of Jackson's claims challenged conduct that "arose after the criminal complaint was filed as part of his criminal prosecution." Because of this it determined that the prosecutors' actions were "intimately associated with the judicial phase of Mr. Jackson's criminal prosecution." Jackson argues on appeal that Scott and Williams each acted negligently in an administrative capacity, prior to occupying the role of advocate. We disagree, and conclude that the prosecutors are entitled to absolute immunity from all of Jackson's claims.
Jackson argues that by supervising Williams's prosecution of the first trial, Scott acted in an administrative capacity, and did *930 not assume the role of an advocate until he presided over the second trial himself. The U.S. Supreme Court has expressly rejected this argument. In Van de Kamp v. Goldstein , the Court held that absolute prosecutorial immunity extends to certain office-wide supervisory practices, like the training of new prosecutors.[25] The Court concluded this was an administrative function.[26] But in reaching this decision, the U.S. Supreme Court first discussed a hypothetical case, in which a plaintiff sought "damages not only from the trial prosecutor but also from a supervisory prosecutor or from the trial prosecutor's colleagues."[27] It reasoned that in such a scenario "all these prosecutors would enjoy absolute immunity" because their "behavior, taken individually or separately, would involve '[p]reparation ... for ... trial,' and would be 'intimately associated with the judicial phase of the criminal process.' "[28]
The U.S. Supreme Court's hypothetical case, which it described as "involv[ing] supervisory ... prosecutors but ... not ... administration,"[29] maps perfectly onto Jackson's argument about Scott. Scott was not acting in an administrative capacity when he supervised Williams's prosecution of Jackson, but rather as an advocate himself.[30] We thus reject Jackson's argument that Scott was acting as an administrator "prior to and throughout the first trial."
Turning to Williams, Jackson argues that she acted in an administrative capacity when participating in pretrial calendar calls. He contends that there is some period after the initiation of criminal proceedings, but before the trial, in which the prosecutor's role is administrative and investigative. He also claims that Williams was not acting as an advocate "when she defended the convictions secured by Mr. Scott on appeal."
But again, the U.S. Supreme Court has squarely rejected these arguments. It recognized in Imbler that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom."[31] And it reasoned in Burns v. Reed that "pretrial court appearances by the prosecutor in support of taking criminal action against a suspect" must give rise to absolute immunity.[32] A prosecutor assumes the role of advocate for the State when he or she appears at a calendar call, and makes that pretrial appearance "in support of taking criminal action against a suspect."[33] So, too, a prosecutor continues to act as an advocate for the State when he or she defends a conviction on appeal.
We conclude that the prosecutors were acting in an advocacy role when they took the actions that gave rise to Jackson's claims. We therefore hold that they were entitled to assert the defense of absolute immunity against all of Jackson's claims, both state and federal, and that it was not error for the superior court to grant their motion to dismiss on such grounds.[34]
*931 B. It Was Not Error To Award The Prosecutors Attorney's Fees.
The superior court awarded the prosecutors $ 4,311.87 in attorney's fees under Civil Rule 82(b)(2). On appeal Jackson argues that the fee award was improper. "We review an award for attorney's fees for abuse of discretion and will not reverse it unless it is manifestly unreasonable."[35]
Civil Rule 82(b)(2) applies when the prevailing party in a case does not receive a money judgment. It provides that the superior court "shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred."[36] Under Rule 82(b)(3), the court may deviate from this formula upon consideration of a number of factors, but "[a]pplication of Rule 82(b)(3) factors is discretionary, not mandatory."[37]
The superior court specifically requested briefing from Jackson on the Rule 82(b)(3) factors, explaining that it was "hesitant to assess thousands of dollars of fees against a pro se litigant like Mr. Jackson without at least first considering whether there is reason to deviate from the 20% benchmark" set by Rule 82(b)(2). Jackson complied, arguing that fees should not be awarded because he was indigent and self-represented, and because a fee award would deter other similarly situated litigants from pressing their claims. The superior court considered each of these arguments, but eventually decided not to depart from the Rule 82(b)(2) fee schedule. It explained that Jackson had presented no evidence to prove his indigence. It also noted that our precedent does not forbid trial courts from awarding fees against indigent litigants.[38] The court also disagreed with Jackson's argument that a fee award would deter future litigants, noting that he stood "to make enormous financial gains if successful" with his suit. Accordingly the superior court ordered Jackson to pay the full $ 4,311.87 requested by the prosecutors.
Jackson argues that the superior court abused its discretion by awarding any attorney's fees to the prosecutors. He again contends that the fee award would have a chilling effect on future litigants, and would "emphasize 'a desire (of the superior court) to discourage claims by others against the prevailing party (the State and unscrupulous prosecutors) or its insurer.' "[39]
The superior court discussed in its order whether the fee award would have a chilling effect on future litigants. It reasoned "that if an individual is arrested improperly and, subsequently, maliciously prosecuted, they will not be deterred from litigating their case just because there is some risk that they could ... be forced to pay out just over $ 4,000 in fees." The superior court also distinguished our decision in David S. v. Jared H. , where we affirmed a reduced fee award against a biological father contesting the adoption of his children without his consent.[40] It explained that unlike parties in adoption cases who face "only ... the very real risk of significant financial loss and no chance at financial gain," Jackson had requested millions of dollars in actual and punitive damages. It concluded that "any chilling effect is all but eliminated when the litigant stands to reap millions of dollars in damages, like Mr. Jackson does, if successful in their suit."
Jackson's argument that the superior court's fee award was designed to discourage future claims against "unscrupulous prosecutors" seems to misunderstand the factor he quotes. Under Rule 82(b)(3)(J), a superior court may consider "the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against *932 the prevailing party or its insurer." This factor asks whether the prevailing party intentionally inflated its legal fees in order to secure a fee award that would discourage future litigation. But Jackson seems to be arguing that the superior court awarded the prevailing party fees in order to discourage future litigation. There is no indication in the record that the prosecutors inflated their legal fees to discourage litigation. Moreover, there is no evidence in the record that the superior court had an improper motive in granting the fee award. The court's request for briefing from Jackson, and its thorough analysis of his arguments, indicate that it was especially sensitive to Jackson's position, not hostile to it.
The superior court's order contained a well-reasoned analysis of our previous decisions addressing fee awards and the relevant factors under Civil Rule 82(b)(3). We conclude that the superior court did not abuse its discretion when it awarded the prosecutors attorney's fees.
Jackson also argues in his reply brief that it is not "proper to make a person pay the State of Alaska legal fees where the person has filed a complaint based on deprivation of constitutional rights." Although he cited no authority, this argument seems to rely on AS 09.60.010(c)(2), which prohibits the assessment of attorney's fees against a party asserting constitutional protections if the claim "was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved." The superior court found that AS 09.60.010(c)(2) did not apply in this case, because Jackson stood to gain "money damages numbering in the millions" if his claim succeeded. Jackson does not dispute this finding in his briefing. Since he raises it for the first time in his reply brief, cites no authority for support, and does not challenge the determinative finding, we conclude that Jackson has waived this argument.[41]
C. The Remaining Issues Presented In Jackson's Briefing Are Not Properly Before Us.
Jackson makes several arguments that we may not consider on appeal. Two of these concern his civil case: that the superior court erred when it denied his motion to continue the stay of his case, and that it erred when it denied his motion for default judgment against the Borough of Haines. Neither order is a final judgment from which Jackson can properly appeal.[42]
Jackson also challenges his underlying criminal convictions. We do not have jurisdiction to directly review Jackson's criminal convictions as a part of his civil appeal.[43] We therefore cannot consider the remainder of Jackson's arguments.
IV. CONCLUSION
The superior court's orders granting the prosecutors' motion to dismiss and awarding attorney's fees are AFFIRMED.

Jackson has been self-represented at all stages of this litigation.

Jackson did not name the Borough in the case caption, but identified it as a party in the body of his original complaint. The superior court later granted Jackson leave to amend his complaint to include the Borough in the caption.

This statute creates a civil cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

Alaska Civil Rule 12(b)(6) allows a party to move for dismissal of the claims against them for "failure to state a claim upon which relief can be granted."

Alaska Civil Rule 54(b) provides:
When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Only Jackson's claims against the prosecutors were dismissed, and his claims against the remaining defendants were allowed to continue.

Alaska Civil Rule 82(b)(2) provides that "the court ... shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred" when that party does not also recover a money judgment.

Jackson originally filed a petition for review in February 2018. A month later, we converted that petition into an appeal by right, pursuant to Alaska Appellate Rule 202.

Martin v. Mears , 602 P.2d 421, 428 (Alaska 1979) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure : Civil § 1357, at 605-06 (1969 & Supp. 1979) ); see also Douglas Indian Ass'n v. Cent. Council of Tlingit & Haida Indian Tribes of Alaska , 403 P.3d 1172, 1177 n.17 (Alaska 2017) ("Affirmative defenses may be raised in a preanswer motion under Civil Rule 12(b)(6) as long as the defense 'clearly appear[s] on the face of the pleading.' " (alteration in original) (quoting Mears , 602 P.2d at 428 )).

Hahn v. GEICO Choice Ins. Co. , 420 P.3d 1160, 1166 (Alaska 2018) (quoting Varilek v. City of Houston , 104 P.3d 849, 851 (Alaska 2004) ).

Hill v. Giani , 296 P.3d 14, 20 (Alaska 2013).

Imbler v. Pachtman , 424 U.S. 409, 427, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) ; see also State, Dep't of Health & Soc. Servs., Office of Children's Servs. v. Doherty , 167 P.3d 64, 70 (Alaska 2007) (noting that "defenses to a federal cause of action are defined by federal law" (quoting Van Sandt v. Brown , 944 P.2d 449, 452 n.5 (Alaska 1997) )).

See Kurka v. State , No. S-14522, 2012 WL 5883277, at *2 (Alaska Nov. 21, 2012) (declining to consider whether prosecutors were entitled to absolute immunity when superior court dismissed claims against them on grounds of qualified immunity); cf. Schug v. Moore , 233 P.3d 1114, 1117 (Alaska 2010) ("We do not decide whether [an assistant attorney general] was protected by absolute or qualified immunity when she represented [the Alaska Department of Corrections] in the underlying litigation.").

424 U.S. 409, 427-28, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Id . at 424-25, 96 S.Ct. 984.

Id. at 425, 96 S.Ct. 984.

Id. at 427, 96 S.Ct. 984.

Cf. Aspen Expl. Corp. v. Sheffield , 739 P.2d 150, 160 (Alaska 1987) ("To allow the governor's motives to be questioned at every turn, by every disappointed applicant for a mining lease, or a land grant, or oil rights, would effectively undermine the governor's ability to govern.").

See Greywolf v. Carroll , 151 P.3d 1234, 1241 (Alaska 2007) (identifying " 'malice' or a primary purpose other than that of bringing an offender to justice" as an element of malicious prosecution (quoting Stephens v. State, Dep't of Revenue , 746 P.2d 908, 911 (Alaska 1987) )).

See id. at 1241-42.

Cf. Aspen Expl. Corp. , 739 P.2d at 161 (reasoning that a trial to determine the governor's motives when rejecting permit applications would be lengthy, require a jury to review policy decisions, and prove "more costly to the public good than the possibility of actual malice or wrongful motive").

See e.g. , Knapper v. Connick , 681 So. 2d 944, 946, 950 (La. 1996) (explaining that "[t]he overwhelming majority of courts in other states have extended absolute immunity to prosecutors when they are acting within their traditional roles as advocates for the state" before adopting the defense itself); but see Simms v. Seaman , 308 Conn. 523, 69 A.3d 880, 891 (2013) (noting that absolute immunity does not bar malicious prosecution claims under Connecticut law).

Imbler v. Pachtman , 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Van de Kamp v. Goldstein , 555 U.S. 335, 342, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009).

Id. at 339, 344-49, 129 S.Ct. 855.

Id. at 344-46, 129 S.Ct. 855.

Id. at 345, 129 S.Ct. 855.

Id. (alteration and omissions in original) (internal citation omitted) (quoting Imbler , 424 U.S. at 431 n.33, 430, 96 S.Ct. 984 ).

Id.

See id. ("Decisions about indictment or trial prosecution will often involve more than one prosecutor within an office.").

424 U.S. at 431 n.33, 96 S.Ct. 984.

500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (holding that a prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute immunity").

Id.

The prosecutors argue on appeal that Heck v. Humphrey provides an additional bar to Jackson's § 1983 claims. In that case, the U.S. Supreme Court held that "in order to recover damages ..., a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ..., or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey , 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Having determined that the prosecutors are entitled to absolute immunity, we decline to address this argument.

Greene v. Tinker , 332 P.3d 21, 41 (Alaska 2014).

Alaska R. Civ. P. 82(b)(2).

Greene , 332 P.3d at 41 (alteration in original) (quoting Rhodes v. Erion , 189 P.3d 1051, 1055 (Alaska 2008) ).

See David S. v. Jared H. , 308 P.3d 862, 874-75 (Alaska 2013) (affirming an award of attorney's fees against an allegedly indigent litigant); see also Prentzel v. State, Dep't. of Public Safety , 169 P.3d 573, 595 (Alaska 2007) (same).

See Alaska R. Civ. P. 82(b)(3)(I), (J).

308 P.3d at 874-75. The father in David S. also argued his indigence militated against the award of attorney's fees. Id. at 874.

See Kollander v. Kollander , 400 P.3d 91, 94 n.3 (Alaska 2017) (considering an argument that is only raised cursorily and without citation to authority to be waived); Barnett v. Barnett , 238 P.3d 594, 603 (Alaska 2010) ("[W]e deem waived any arguments raised for the first time in a reply brief ....").

See Alaska R. App. P. 202 (allowing parties to appeal from "a final judgment entered by the superior court"). "We have defined 'final judgment' as one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " Wagner v. Wagner , 205 P.3d 306, 310 (Alaska 2009) (quoting Greater Anchorage Area Borough v. City of Anchorage , 504 P.2d 1027, 1030 (Alaska 1972), overruled on other grounds by City & Borough of Juneau v. Thibodeau , 595 P.2d 626 (Alaska 1979) ). Neither an order denying a motion to continue a stay nor an order denying a motion for default judgment is an appealable final judgment because neither terminates the litigation on the merits.

See AS 22.05.010(b) ("Appeal to the supreme court is a matter of right only in those actions and proceedings from which there is no right of appeal to the court of appeals ... or to the superior court ...."). Jackson was convicted in the Haines district court, and under AS 22.07.020(c) and AS 22.15.240(b) he had a right of appeal to the court of appeals or superior court. He may not appeal his criminal convictions to this court as a matter of right.