Gregory WAGNER, Appellant,

v.

Richard WAGNER, Appellee.

No. S–12306.

Supreme Court of Alaska.

May 23, 2008.

John J. Connors, Law Office of John J. Connors, P.C., Fairbanks, for Appellant.

No appearance by Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

A father breached a contract with his son to share oil revenues with him in consideration for the son's co-signing a $1.025 million bank loan. Following a jury trial, the son obtained a partial final judgment for back payment and an Alaska Rule of Civil Procedure 82(b)(1) attorney's fees award. The son also received a partial final judgment for specific performance and a Rule 82(b)(2) attorney's fees award. The son appeals the Rule 82(b)(2) attorney's fees award. Because the partial final judgment for specific performance was not a money judgment, the

superior court properly relied on Rule 82(b)(2), and therefore we affirm the superior court's award of attorney's fees.

## II. FACTS AND PROCEEDINGS

Richard Wagner owns oil and gas leases on the North Slope and in Cook Inlet. His royalty interests are valued at between $7.572 and $19.559 million. He filed for bankruptcy in 1988, and as of 2001 still owed substantial sums to his creditors. In December 2001 Richard and his son Gregory Wagner agreed that Gregory would co-sign for a $1.025 million loan from Northrim Bank to Richard, with the funds to be used to satisfy one of Richard's creditors. In consideration for Gregory making his own credit available and pledging the real estate he and his wife owned as collateral for the loan, Gregory and Richard agreed that Gregory would be entitled to at least $2,500 per month from Richard's oil royalties.

For several months, Richard made no payments to Gregory, and on November 25, 2002, Gregory sent his father a demand letter. In response, Richard made two payments to Gregory, the first in December 2002 [1] and the second in January 2003. [2] Richard made no further payments, and Gregory filed a complaint for specific performance in superior court on January 24, 2003. [3] A jury trial was held before Judge Mark I. Wood in August 2005. The jury found that an oral agreement existed, outlined the basic terms of that agreement, [4] found that Richard had breached the agreement, determined that Richard owed Grego-ry $139,180.89 in back payments, and concluded that Richard's obligation to share royalties per the terms of the agreement would continue "until production on wells ends." The trial court heard oral argument on the specific performance claim on November 10, 2005.

Judge Wood issued a partial final judgment for $182,130.06 against Richard on November 14, 2005. This amount included the $139,180.89 in back payments that the jury had determined Richard owed Gregory, $10,160.33 in prejudgment interest, $17,434.12 in attorney's fees, and $15,354.72 in costs. On December 23, 2005, Judge Wood issued a partial final judgment for specific performance, requiring Richard to perform his obligations under the agreement found by the jury and including an award for $33,300.30 in attorney's fees. Judge Wood calculated attorney's fees under the partial final judgment for back payment using Rule 82(b)(1) and relied on Rule 82(b)(2) to calculate the attorney's fees award for the partial final judgment for specific performance.

Gregory appeals the attorney's fees awarded in the partial final judgment for specific performance.

## III. DISCUSSION

### A. Standard of Review

We review awards of attorney's fees for an abuse of discretion [5] and will only reverse if the award is "arbitrary, capricious, manifestly unreasonable, or stemmed from

---

1. This payment was for $24,419.13 and was sent "along with a spreadsheet from [Richard's] accountant which purported to calculate the payments owed under the agreement. While acknowledging the contract terms, [Richard] suggested that the agreement had been hastily written and required 'some clarifications.'" Neither Gregory nor Richard ever took steps to modify or clarify their agreement.

2. The second payment was for $3,875.72.

3. Gregory eventually filed two amended complaints listing additional claims against Richard, including a claim for back payment.

4. In response to the question, "[W]hat were the terms of that agreement?," the jury answered, "In exchange for getting a $1,025,000 loan from Northrim Bank to repay Richard Wagner's debt at Key Bank, Gregory Wagner will receive a share of profits from Richard Wagner's oil royalties." In its findings of fact, the superior court described the agreement as follows:

   Richard and Gregory agreed that the monthly income from the oil royalties that secured the Key Bank loan would be used first to pay all required payments on the Northrim Bank loan. The next $10,000 of monthly income would be allocated $2,500 to Gregory and then $7,500, or the balance, whichever was less, to Richard. Anything over $10,000 would be divided equally between them.

5. *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007).

improper motive." [6] We consider de novo whether the trial court should have applied Rule 82(b)(1) or Rule 82(b)(2) in calculating the fee award.[7]

## B. The Superior Court Applied the Appropriate Attorney's Fees Schedule to Gregory's Partial Final Judgment for Specific Performance.

Gregory contends that the superior court erred by calculating the attorney's fees award for the partial final judgment for specific performance under Rule 82(b)(2).[8] He argues that the trial court's reliance on Rule 82(b)(2) was misplaced because the partial final judgment for specific performance was a monetary judgment. He maintains that because the present value of his prospective recovery under the judgment is $2.125 million,[9] "Civil Rule 82(b)(1) fees of ... $212,500 are thus payable."

■ We disagree. In *Dillingham Commercial Co. v. Spears*,[10] we recognized that the superior court erred in applying the fee schedule applicable to money judgments [11] to a judgment for specific performance of an option contract.[12] We specifically indicated that "[r]esort to the schedule of attorney's fees set forth in Civil Rule 82(a)(1) was inappropriate since Dillingham did not receive a money judgment." [13] We have defined "money judgment" for attorney's fees purposes as

a judgment in which "money change[s] hands." [14] Gregory's partial judgment for specific performance was an equitable remedy,[15] not a money judgment. The superior court appropriately applied Rule 82(b)(2) to Gregory's motion for attorney's fees under his partial judgment for specific performance.

## C. The Superior Court Did Not Deviate from the Schedule in Rule 82(b) in Its Award of Attorney's Fees.

Gregory argues in the alternative that the superior court erred in calculating its award of attorney's fees for the judgment for specific performance. Gregory maintains that under Rule 82(b)(2), he was entitled to thirty percent of his "reasonable actual attorney's fees," [16] which totaled $169,115, and contends that the award did not conform to this schedule. Gregory also contends that the superior court provided no explanation for its deviation from the schedule listed in Rule 82(b)(2).

■ We disagree. Gregory's attorney's fees were awarded in two phases: the first covered the $161,284 in fees incurred from January 2003 through November 30, 2005. Under Rule 82(b)(2), Gregory was entitled to thirty percent of his total attorney's fees for that first phase, or $48,385.20, for the partial

---

**6.** *Id.; Strong Enters., Inc. v. Seaward*, 980 P.2d 456, 458 (Alaska 1999).

**7.** *Strong Enters.*, 980 P.2d at 458.

**8.** Rule 82(b)(1) applies to "a party recovering a money judgment in a case," while Rule 82(b)(2) applies to "cases in which the prevailing party recovers no money judgment."

**9.** Gregory calculated this value by taking $9,068,608, one estimate of the discounted present day value of Richard's oil royalties, subtracting the approximately $500,000 required to retire the Northrim Bank debt (which, he calculated, left the value of the royalties at $8.5 million), and dividing $8.5 million by 25%, which Gregory contends is his "share" of the royalties, for a total of $2.125 million.

**10.** 641 P.2d 1 (Alaska 1982).

**11.** This schedule is now contained in Rule 82(b)(1), but at the time *Dillingham* was decided, this schedule was in Rule 82(a)(1). *Russell v.*

*Criterion Ins. Co.*, 917 P.2d 664, 665 n. 2 (Alaska 1996).

**12.** *Spears*, 641 P.2d at 10 n. 16.

**13.** *Id.*

**14.** *Atl. Richfield Co. v. State*, 723 P.2d 1249, 1252 (Alaska 1986); *see also Strong Enters.*, 980 P.2d at 458.

**15.** *Oaksmith v. Brusich*, 774 P.2d 191, 197 (Alaska 1989) (citing *Hall v. Add–Ventures, Ltd.*, 695 P.2d 1081, 1087 (Alaska 1985)); BLACK'S LAW DICTIONARY 1435 (8th ed. 2004) ("Specific performance is an equitable remedy.").

**16.** The rule indicates that "[i]n cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred."

judgment on specific performance.[17] However, had Judge Wood awarded this amount, Gregory would have enjoyed a double recovery because Gregory had already recovered $17,434.12 in attorney's fees in November 2005 on the partial final judgment for back payment. Instead, the superior court subtracted the earlier award, leaving an award of $30,951 for fees incurred through November 2005 for work related to the judgment for specific performance.

The second phase covered fees incurred in December 2005. The superior court anticipated the need for an additional attorney's fees award when it made its award for the first phase: "This award is for billings through 11/30/05. Gregory Wagner is entitled to 30% of reasonable, actual attorney's fees from 11/30/05 through 12/23/05 (the dates of judgment) in addition to the above figure. Counsel for Gregory Wagner shall submit their affidavits for that period and another judgment for attorney's fees."

When Gregory filed his supplemental motion for attorney's fees for work performed during December 2005, he indicated that he had "incurred $7,831.00 in fees during this period." Thirty percent of that total is $2,349.30.[18] When added to the award of $30,951 on the judgment for specific performance through November 30, 2005, the Rule 82(b)(2) fees total $33,300.30, and this is exactly what Judge Wood awarded. When added to the Rule 82(b)(1) award of $17,434.12 on the judgment for back payment, the fees total $50,734.42, which amounts to thirty percent of the total fees expended in the litigation—$169,115.

Because the superior court adhered strictly to the formula of Rule 82(b)(2) in its award of attorney's fees, it committed no error.

## IV. CONCLUSION

We AFFIRM the superior court's fee award in all respects.

---

**17.** $161,284 \times .30 = $48,385.20.

**18.** $7,831 \times .30 = $2,349.30.