**Richard WAGNER, Appellant,**

v.

**Gregory WAGNER, Appellee.**

**No. S–12666.**

Supreme Court of Alaska.

April 17, 2009.

---

S. Jason Crawford, Crawford Law Offices, LLC, Fairbanks, for Appellant.

John J. Connors, Law Office of John J. Connors, P.C., Fairbanks, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

In 2005 the trial court awarded a judgment for specific performance to a son against his father on a contract entered into by father and son in which the son helped the father obtain a bank loan. The father appealed that judgment to this court in 2006, but we dismissed that appeal for lack of prosecution. The father did not pay, and in 2007 the trial court issued a writ of execution against him. The father now appeals from that writ of execution. The father raises three questions on appeal: (1) Did the trial court err in its 2005 judgment by ordering specific performance based on the royalties from certain of the father's oil and gas leases that were not part of the security for the loan? (2) Did the trial court err in awarding specific performance rather than a lump sum judgment? and (3) Did the trial court erroneously stray from the formula in the 2005 judgment when it calculated the amount due to the son in the writ of execution?

Of these three questions raised, we reach only the third. We decline to decide the first and second issues because they are both time-barred and barred by our dismissal of the father's appeal from the 2005 judgment for failure to prosecute. The father's first and second questions challenge the 2005 order and judgment, and he cannot make those challenges now. And we conclude the third

challenge cannot succeed. What the father claims was error is, in fact, the correct calculation ordered by the trial court in 2005. Accordingly, we affirm the judgment of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Facts

Richard Wagner filed for bankruptcy in 1988.[1] Richard's assets included royalties from oil and gas leases he possessed. Richard's creditors included Key Bank, whom Richard owed $2.5 million. The bankruptcy court issued Richard's final bankruptcy plan in 1994. The plan divided Richard's oil and gas lease royalties among his creditors. In 2001 Key Bank offered to settle Richard's $2.5 million debt for $1 million if Richard paid by December 31, 2001. Richard was unable to raise the money; he therefore asked his son Gregory Wagner to help him get a loan.

Gregory agreed to co-sign a $1,025,000 loan from Northrim Bank with Richard. Gregory and his wife put up their home as collateral and put their personal credit at risk. In exchange for Gregory's co-signature on the loan, Richard and Gregory entered into an oral agreement, which they later reduced to writing.

The written agreement provided that income from Richard's royalties that had secured the Key Bank loan would first pay the Northrim loan. Any remaining royalty income would be divided as follows: Gregory would get the first $2,500 per month, Richard would get the next $7,500 per month, and they would divide any remaining royalty income equally between them. The agreement did not take into account the portions of royalty income to be paid to other creditors under the bankruptcy plan.

### B. Proceedings

In 2002 Richard defaulted in his payments to Gregory, and Gregory sued in 2003. The case went to trial in August 2005. At the end of trial, the jury returned the following answers to the following special interrogatories:

> [Q:] Prior to the time the Wagners signed the loan documents at Northrim Bank on December 24, 2005, had they entered into an oral agreement? [A:] Yes.
>
> [Q:] If yes, what were the terms of that agreement? [A:] In exchange for getting a $1,025,000 loan from Northrim bank to repay Richard Wagner's debt at Key Bank, Greg Wagner will receive a share of profits from Richard Wagner's oil royalties.

The jury found breach by Richard and awarded Gregory past damages of $139,180.39.[2]

In November 2005 the superior court concluded that specific performance was an appropriate remedy and ordered Gregory to prepare a judgment for specific performance. The court held, contrary to Richard's argument, that the jury's failure to specify the terms of the oral agreement did not prevent specific performance. The court reasoned that the jury must have used the terms of the written agreement to calculate its award of past damages, and therefore that the jury must have found the terms of the oral agreement consistent with the terms of the written agreement. The court wrote:

> Applying the formula of the [written] agreement mechanically to the testimony of ... [a witness] and the other evidence of the oil revenues from Richard's shares of his oil leases introduced at trial, the past damages would be calculated at $141,124.00. That is within $2000.00 of what the jury actually awarded [$139,-180.39]. The jury did not receive a lot of help from counsel in calculating past damages and their award to Greg is within reasonable mathematical error if they performed the calculations under the agreement themselves.... The difference could also be explained by the jury's determination that there were insufficient royalties

---

**1.** We outlined many of these facts in our first opinion in this case, *Wagner v. Wagner*, 183 P.3d 1265, 1266 (Alaska 2008). In that case we affirmed the trial court's award of attorney's fees to Gregory, which Gregory had appealed. Richard filed a separate appeal in that case, but we dismissed his appeal for lack of prosecution.

**2.** *Wagner*, 183 P.3d at 1266.

to meet the complete payout of the agreement on one or more months.

The trial court said it would order Richard to pay Gregory according to the formula in the written agreement. The trial court also said it would calculate Gregory's payments without deducting amounts owed to creditors other than Northrim Bank, including the Weeks Foundation. In December 2005 the superior court entered judgment for specific performance against Richard.

In his earlier appeal—which we ultimately dismissed for lack of prosecution—Richard challenged a number of the superior court's conclusions of fact and law. He generally did not state any legal grounds for those challenges, merely stating that the superior court "erred" in entering them. He challenged the superior court's conclusion of law that "[t]he contract between Richard and Greg is sufficiently clear and definite that the Court is able to enforce it without having to supply essential terms that the parties did not agree to." He also challenged the superior court's decision to order specific performance into the future, as well as the superior court's order that all Richard's royalty income be paid directly into an escrow account and directly disbursed from the escrow account, without ever passing through Richard's control.

In March 2007 the superior court issued a writ of execution against Richard for arrearages owed to Gregory under the December 2005 specific performance judgment. Richard appeals from this writ of execution.

## III. STANDARD OF REVIEW

 We review questions of law *de novo* and questions of fact for clear error.[3] We review awards of specific performance for abuse of discretion.[4] We will not upset a jury verdict if there is a logical theory that reconciles apparent inconsistencies in the jury verdict.[5]

## IV. DISCUSSION

### A. Two of Richard's Points Are Barred.

 We decline to resolve two of Richard's issues because they challenge the 2005 judgment, from which Richard already appealed. We dismissed that appeal because Richard failed to prosecute it.[6] Alaska Statute 22.05.010 establishes that a party has only one appeal as of right. Richard used that appeal from the 2005 orders in 2006. His points on appeal in 2006, listed above, appear to cover his current arguments that the trial court deviated from the jury award by calculating specific performance based on too many of Richard's leases and that the trial court erred by awarding specific performance.[7]

 Even if Richard's previous appeal did not cover these arguments, any challenges to the 2005 judgment are also time-barred. Alaska Appellate Rule 204 requires a party to appeal within thirty days of entry

---

3. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. *See Moran v. Holman*, 501 P.2d 769, 771 (Alaska 1972) ("[A]n application for specific performance of a contract, as a question of equity, is a matter addressed to the sound discretion of the trial court.... The trial court's decision in such circumstances 'will not be set aside unless against the clear weight of the evidence.'" (quoting *Jameson v. Wurtz*, 396 P.2d 68, 74 (Alaska 1964))).

5. *See McCubbins v. State, Dep't of Natural Res., Div. of Parks & Recreation*, 984 P.2d 501, 506 (Alaska 1999).

6. *See* Alaska R.App. Pro. 511.5.

7. Richard's argument that the trial court erred in awarding specific performance is brief and unclear. Although it seems most likely that he challenges the underlying 2005 judgment, it may be that he intended to challenge the writ of execution. Even if we were to reach the merits on this point, we would affirm the trial court. Richard argues that the trial court should have awarded Gregory a lump sum judgment, rather than specific performance, based on AS 09.17.040. That statute applies only to tort cases, not contract cases like this one. The statute requires that if a court awards damages for personal injury, the court must award future damages as a lump sum at current value. The court in this case has not awarded damages for personal injury, and the statute plainly does not apply to contract cases such as this one. We review a superior court's order of specific performance for contract damages for abuse of discretion. *See Moran*, 501 P.2d at 771 (Alaska 1972). We find no abuse of discretion in this case.

of a final order or judgment. Appellate Rule 202 provides that a party may appeal a "final judgment entered by the superior court."[8] We have defined "final judgment" as one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[9] In this case, litigation on the merits ended with the November and December 2005 orders. As our definition of "final judgment" indicates, execution comes after final judgment. Execution does not give a party a second chance to appeal the merits more than thirty days after the entry of final judgment.

Thus, we will reach only the merits of Richard's claim that the trial court incorrectly calculated the amount awarded in the writ of execution.

### B. The Trial Court Did Not Err in Its Writ of Execution by Calculating Amounts Due Gregory Without Deducting Amounts Owed to Richard's Bankruptcy Creditors.

■ Richard argues that the trial court erred in its March 2007 writ of execution by calculating the amount due Gregory without deducting amounts owed to Richard's bankruptcy creditors, particularly the Weeks Foundation. But we conclude that cannot be error because that calculation mirrored the jury's findings and because the trial court plainly stated, in both its November and December 2005 orders, that it would calculate amounts due Gregory without regard for the Weeks Foundation's claims. Richard points to no evidence in the record that the trial court's writ of execution strayed from the formula laid out in detail in both the November and December 2005 orders.

First, in its November 2005 order on specific performance, the trial court made the following finding of fact: "The Wagners' agreement makes no provision for payments to Weeks[,] and Gregory's share of royalties is determined without any deduction for the

payments Richard was required to make to Weeks." The trial court then concluded:

> The calculation of amounts allocated to Gregory ... should be made each month by taking the gross royalties, subtracting amounts paid to Northrim Bank, and then allocating to Gregory $2,500 plus 50% of the balance over $10,000; the amount so allocated, even though actually paid to Weeks or to tax and escrow costs, will be part of the delinquent amounts to be paid to Gregory....

The formula in the trial court's December 2005 judgment is consistent with its November order. The December order provided:

> [T]he amount to be allocated to Gregory Wagner shall be determined by taking the total royalties received each month and (I) first, subtracting the amounts paid on the obligation to Northrim Bank; (ii) second, allocating to Gregory $2,500 or the remaining amount, whichever is less; (iii) third, if the difference between the royalties received and the amounts paid to Northrim Bank exceed $10,000, allocating to Gregory 50% of the difference in excess of $10,000.

In its writ of execution, the trial court properly used the same methodology that it had used in its November 2005 order on specific performance and in its December 2005 judgment.

## V. CONCLUSION

Because Richard's first and second issues on appeal are not properly before us, we decline to reach them. Because, in regard to the third issue, the superior court did not err in calculating the amount of the writ of execution, we AFFIRM the decision of the superior court in all respects.

MATTHEWS, Justice not participating.

---

**8.** Appellate Rule 403 allows petitions for appeals when there is no appeal as of right, but those must be made within ten days of the order.

**9.** *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027, 1030 (Alaska 1972)

(quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)), *overruled on other grounds by City & Borough of Juneau v. Thibodeau,* 595 P.2d 626 (Alaska 1979).