Richard WAGNER, Appellant,

v.

Gregory WAGNER, Appellee.

Richard Wagner, Appellant,

v.

Gregory Wagner, Appellee.

Nos. S–13055, S–13175.

Supreme Court of Alaska.

Oct. 16, 2009.

S. Jason Crawford, Crawford Law Offices, LLC, Fairbanks, for Appellant.

John J. Connors, Law Office of John J. Connors, P.C., Fairbanks, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and CHRISTEN, Justices. [WINFREE, Justice, not participating.].

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

In exchange for his son Gregory Wagner's help obtaining a loan, Richard Wagner, who had previously filed for bankruptcy and had many creditors, agreed to give Gregory a portion of the royalty proceeds from his oil lease holdings. When Richard failed to honor this agreement, Gregory sued and in 2005 obtained a judgment for specific performance providing that he would be entitled to a share of Richard's royalties for as long as the subject oil wells continued producing. In two separate appeals, Richard contests the superior court's continuing enforcement of this judgment. Because Richard's arguments in both appeals are either untimely, procedurally barred challenges to the 2005 judgment or otherwise lack merit, we affirm the superior court's decisions in all respects.

## II. FACTS AND PROCEEDINGS

### A. Facts

This is not the first time Richard and Gregory Wagner have been before us.[1] We described the basic facts underlying their dispute in a recently published opinion:

Richard Wagner filed for bankruptcy in 1988. Richard's assets included royalties from oil and gas leases he possessed. Richard's creditors included Key Bank, whom Richard owed $2.5 million. The bankruptcy court issued Richard's final bankruptcy plan in 1994. The plan divided Richard's oil and gas lease royalties among his creditors. In 2001 Key Bank offered to settle Richard's $2.5 million debt for $1 million if Richard paid by December 31, 2001. Richard was unable to raise the money; he therefore asked his son Gregory Wagner to help him get a loan.

Gregory agreed to co-sign a $1,025,000 loan from Northrim Bank with Richard. Gregory and his wife put up their home as collateral and put their personal credit at risk. In exchange for Gregory's co-signature on the loan, Richard and Gregory

entered into an oral agreement, which they later reduced to writing.

The written agreement provided that income from Richard's royalties that had secured the Key Bank loan would first pay the Northrim loan. Any remaining royalty income would be divided as follows: Gregory would get the first $2,500 per month, Richard would get the next $7,500 per month, and they would divide any remaining royalty income equally between them. The agreement did not take into account the portions of royalty income to be paid to other creditors under the bankruptcy plan.[2]

### B. Prior Proceedings

We described the trial court proceedings that underlie the current appeals in the same recently published opinion:

In 2002 Richard defaulted in his payments to Gregory, and Gregory sued in 2003. The case went to trial in August 2005. At the end of trial, the jury returned the following answers to the following special interrogatories:

[Q:] Prior to the time the Wagners signed the loan documents at Northrim Bank on December 24, 2005, had they entered into an oral agreement? [A:] Yes.

[Q:] If yes, what were the terms of that agreement? [A:] In exchange for getting a $1,025,000 loan from Northrim bank to repay Richard Wagner's debt at Key Bank, Greg Wagner will receive a share of profits from Richard Wagner's oil royalties.

The jury found breach by Richard and awarded Gregory past damages of $139,180.39.

In November 2005 the superior court concluded that specific performance was an appropriate remedy and ordered Gregory to prepare a judgment for specific performance. The court held, contrary to Richard's argument, that the jury's failure to specify the terms of the oral agreement

---

**1.** *See Wagner v. Wagner (Wagner II )*, 205 P.3d 306 (Alaska 2009); *Wagner v. Wagner (Wagner I )*, 183 P.3d 1265 (Alaska 2008).

**2.** *Wagner II*, 205 P.3d at 308 (footnote omitted).

did not prevent specific performance. The court reasoned that the jury must have used the terms of the written agreement to calculate its award of past damages, and therefore that the jury must have found the terms of the oral agreement consistent with the terms of the written agreement. The court wrote:

> Applying the formula of the [written] agreement mechanically to the testimony of ... [a witness] and the other evidence of the oil revenues from Richard's shares of his oil leases introduced at trial, the past damages would be calculated at $141,124.00. That is within $2000.00 of what the jury actually awarded [$139,180.39]. The jury did not receive a lot of help from counsel in calculating past damages and their award to Greg is within reasonable mathematical error if they performed the calculations under the agreement themselves.... The difference could also be explained by the jury's determination that there were insufficient royalties to meet the complete payout of the agreement on one or more months.

The trial court said it would order Richard to pay Gregory according to the formula in the written agreement. The trial court also said it would calculate Gregory's payments without deducting amounts owed to creditors other than Northrim Bank, including the Weeks Foundation. In December 2005 the superior court entered judgment for specific performance against Richard.[3]

The superior court's partial final judgment for specific performance in December 2005 provided that Richard's future royalty income would be received in escrow and then distributed to Gregory, Richard's various creditors, and Richard according to detailed instructions described in the judgment. The superior court ordered that

> [t]he allocation and distribution of the [royalty] income subject to this judgment shall continue as long as there is production from the oil and gas wells in which Richard

Wagner holds royalty interests subject to this judgment.

As Gregory notes, "because Richard promised to pay Greg out of funds he had previously promised to ... other creditors," the judgment for specific performance prescribed one formula for determining Gregory's monthly royalty entitlement (under which Richard's debts to pre-existing creditors other than Northrim Bank were not factored in because Richard's agreement with Gregory had not taken them into account), and a different formula for actually distributing the monthly royalties (under which Richard's pre-existing creditors were paid first because their rights were prior in time to Gregory's). Gregory describes the result as "a monthly amount accrued [against Richard] in Greg's favor which could not be paid contemporaneously."

Richard appealed the 2005 judgment for specific performance in January 2006, and we later described the issues raised in that appeal as follows:

> Richard challenged a number of the superior court's conclusions of fact and law. He generally did not state any legal grounds for those challenges, merely stating that the superior court "erred" in entering them. He challenged the superior court's conclusion of law that "[t]he contract between Richard and Greg is sufficiently clear and definite that the Court is able to enforce it without having to supply essential terms that the parties did not agree to." He also challenged the superior court's decision to order specific performance into the future, as well as the superior court's order that all Richard's royalty income be paid directly into an escrow account and directly disbursed from the escrow account, without ever passing through Richard's control.[4]

We ultimately dismissed Richard's January 2006 appeal for lack of prosecution.[5]

In April 2006 Gregory appealed the superior court's award of attorney's fees on the

---

**3.** *Id.* at 308–09 (footnote omitted and alterations in original).

**4.** *Id.* at 309 (alteration in original).

**5.** *Id.*

December 2005 judgment for specific performance, arguing that his fees had been calculated improperly.[6] We affirmed the fee award.[7]

In March 2007 the superior court issued a writ of execution against Richard for arrears owed to Gregory under the judgment for specific performance, and Richard appealed from the issuance of that writ in April 2007.[8] Richard argued that (1) the trial court deviated from the jury award when it entered the 2005 judgment for specific performance, (2) the trial court erred in ordering specific performance rather than a lump sum judgment, and (3) the trial court miscalculated the amount of arrears Richard owed when it issued its March 2007 writ of execution.[9] We affirmed the superior court's decision to issue the writ, holding that Richard's first two arguments were time-barred challenges to the 2005 specific performance judgment that were covered by his earlier dismissed appeal, and that his third argument lacked merit.[10]

## C. Current Proceedings

### 1. Appeal S–13055

Upon Gregory's motion, the superior court convened in January 2008 to determine the arrears Richard owed Gregory for the year 2007 under the judgment for specific performance. In February 2008 Superior Court Judge Mark I. Wood issued an order concluding that the arrears for 2007 totaled $393,688.30 and confirming that Gregory would be able to obtain a writ of execution in that amount. Richard now appeals from this February 2008 order, arguing that the order violates Richard's Chapter 11 bankruptcy plan and is inconsistent with the jury's verdict and the judgment for specific performance.

### 2. Appeal S–13175

In May 2008 Richard filed a "motion for return of funds," requesting that the superior court order Gregory to pay him $67,779.54 that he alleged had been "improperly paid over" to Gregory by the clerk of court, who was acting as the escrow agent distributing Richard's royalty income under the judgment for specific performance. Richard argued that certain royalty disbursements that he was owed as assignee of the claims of two of his bankruptcy creditors should have been paid to him by the clerk of court without being intercepted by Gregory's writ of execution for arrears. Richard contended that by paying those funds to Gregory under Gregory's writ of execution, the clerk of court violated the judgment for specific performance because that judgment provided that Richard was to receive those funds.

Gregory countered that there was no reason why the disbursements due Richard as assignee of those bankruptcy creditors' claims would be exempt from Gregory's writ of execution and that Richard's motion was untimely because Gregory had been executing on those disbursements for more than a year before Richard objected. Judge Wood agreed with Gregory and denied Richard's motion in late May 2008, noting that "there is no statutory or case law which supports Richard Wagner's untimely request for an additional exemption from execution." Richard now appeals from the denial of his motion.

## III. STANDARDS OF REVIEW

We "review questions of law de novo[,] questions of fact for clear error," and "awards of specific performance for abuse of discretion."[11]

## IV. DISCUSSION

To the extent that Richard's arguments substantively challenge the 2005 judgment for specific performance, they are untimely and procedurally barred. In *Wagner II* we declined to consider two out of three of

---

6. *Wagner I*, 183 P.3d at 1266–67.

7. *Id.* at 1268.

8. *Wagner II*, 205 P.3d at 309.

9. *Id.* at 307.

10. *Id.* at 309–10.

11. *Id.* at 309 (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979); *Moran v. Holman*, 501 P.2d 769, 771 (Alaska 1972)).

Richard's points on appeal for this very reason—they were untimely, procedurally barred challenges to the 2005 judgment for specific performance that Richard has long since lost the opportunity to appeal.[12] The thirty-day deadline for appeal of the 2005 judgment passed more than two years before Richard filed current appeals S–13055 and S–13175 in 2008.[13] Though execution on the judgment has occurred continually since its entry, "[e]xecution does not give a party a second chance to appeal the merits more than thirty days after the entry of final judgment."[14] Moreover, as we also noted in *Wagner II*, "a party has only one appeal as of right," which Richard used when he filed the 2006 appeal (S–12205) that we dismissed for lack of prosecution.[15]

▮ Thus, while Richard may argue that the judgment for specific performance is being improperly or inaccurately enforced, he may not substantively challenge the judgment. And if he wishes to attack the judgment on the basis that it is void *ab initio* because "the trial court was without proper authority and jurisdiction" in entering it, the proper vehicle for his argument would be a Civil Rule 60(b)(4) motion for relief from the judgment,[16] rather than an appeal from the superior court's actions in enforcing the judgment. Accordingly, we decline to consider the merits of any of Richard's arguments that challenge the 2005 judgment for specific performance.

**A. The Superior Court Did Not Err in Determining that Richard Owed Gregory $393,688.30 in Arrears on the Specific Performance Judgment for the Year 2007 (Appeal S–13055).**

Richard appeals the superior court's February 2008 order determining that he owed Gregory $393,688.30 in arrears for the year 2007 under the 2005 judgment for specific performance. He argues (1) that the order "effectively changed the material terms of the Chapter 11 [bankruptcy] plan ... without obtaining permission from the United States Bankruptcy Court for the District of Alaska," (2) that the jury verdict that formed the basis for the 2005 judgment for specific performance was not precise enough to support that judgment, and (3) that the superior court used the wrong formula in calculating Richard's arrears by "failing to deduct payments to Richard Wagner's pre-existing creditors."

**1. The superior court did not err "in failing to obtain leave or permission to act outside of the Chapter 11 bankruptcy plan."**

▮ Richard asserts that the superior court "issued an order which effectively changed the material terms of the Chapter 11 plan and ... directed the reallocation of income used for plan payments (i.e., royalty from oil and gas well leases) without obtaining permission from the United States Bankruptcy Court...." But Richard provides no explanation as to how the superior court "effectively changed the material terms" of the bankruptcy plan.

If Richard intends to argue that the superior court's February 2008 order impermissibly changed the bankruptcy plan, his argument is waived due to inadequate briefing.[17] As Gregory points out, Richard "does not explain or cite any provision of his Fifth Amended Bankruptcy Plan that is or was in any way offended, or impaired.... Nor does he in any way, reference any specific bankruptcy laws that were offended." And as Gregory further notes, "the Trial Court took great pains *not* to vary the bankruptcy pay-

---

12. 205 P.3d at 309–10.

13. *See* Alaska R.App. P. 204.

14. *Wagner II*, 205 P.3d at 310.

15. *Id.* at 309.

16. Alaska Rule of Civil Procedure 60(b) provides in relevant part:
    On motion and upon such terms as are just, the court may relieve a party or a party's legal

representative from a final judgment, order, or proceeding for the following reasons:
    . . . .
    (4) the judgment is void. . . .

17. *See A.H. v. W.P.*, 896 P.2d 240, 243–44 (Alaska 1995) ("[S]uperficial briefing and the lack of citations to any authority constitutes abandonment of the point on appeal.").

ment stream to Richard's creditors in any way" and "all of the bankruptcy creditors received the royalty payments due them, on time and in accordance with the plan." (Emphasis in original.)

This appeal is not the proper context for an argument that the underlying 2005 judgment for specific performance impermissibly changed the bankruptcy plan. As discussed above, the time has long since passed for Richard to attack the 2005 judgment for specific performance on the merits. And if Richard wishes to challenge it on the basis that it is "void" because "the trial court was without proper authority and jurisdiction" in entering it, the proper vehicle for his argument would be a Civil Rule 60(b)(4) motion for relief from the judgment.[18]

Accordingly, we decline to consider Richard's argument that the superior court erred "in failing to obtain leave or permission to act outside of the Chapter 11 bankruptcy plan."

2. **The superior court did not err "in failing to enter an order setting forth definite terms for the duration and conclusion of specific performance."**

■ Richard next argues that "the jury verdict at trial left an ambiguous term, without any specific amounts for economic damages," and that the superior court "erroneously assumed the role of fact finder" when it ordered specific performance in 2005 based on a formula "to which the jury made no reference." He also contends that "[b]y requiring specific performance indefinitely, instead of determining a specific amount for damages, the trial court has caused a manifest injustice to Richard Wagner by preventing him from knowing what the ramifications of any future conveyance of rights might be."

But these arguments inescapably constitute an untimely, procedurally barred challenge to the 2005 judgment for specific performance. Moreover, they are very similar

18. *See supra* note 16.

19. 205 P.3d at 307.

20. It is possible Richard actually intends to challenge the underlying 2005 judgment for specific

to arguments Richard made in *Wagner II*. In *Wagner II* we rejected these arguments as "time-barred and barred by our dismissal of [Richard's] appeal from the 2005 judgment for failure to prosecute."[19] We now reject them once again for the same reasons.

3. **The superior court did not err "in failing to deduct payments to Richard Wagner's pre-existing creditors."**

■ Finally, Richard appears to argue that the superior court's February 2008 order enforcing the 2005 judgment was inconsistent with that judgment.[20] He asserts that "the Court's decision change[s] the formula the Court initially outlined in its Rule 54(b) Partial Final Judgment" and that the "decision to distribute funds using a formula which first sets out the payments between the parties then credits payments to other creditors directly from Richard's share of the proceeds[ ] was error." He complains that payments to his creditor Weeks should not have been deducted from his share of the royalty proceeds in the calculations underlying the February 2008 order. He argues that the superior court "should have first set aside the monies payable under the terms of the Chapter 11 plan, then calculated the division of remaining royalty funds between the parties." He further asserts that, having settled accounts with several of his bankruptcy creditors, he "should be entitled, as successor in interest for [those] creditors, to keep those funds paid according to the formula set forth in the bankruptcy plan, and then divide the remaining funds according to the trial court's formula adopted in its order on specific performance."

But this argument, made here in the context of Richard's opposition to the superior court's February 2008 order, is simply a revival of an argument Richard made in *Wagner II* regarding the superior court's issuance of Gregory's 2007 writ of execution. In *Wagner II* Richard asserted, using some of

performance. But as discussed above, to whatever extent Richard intends to challenge the 2005 judgment for specific performance, his arguments are untimely and procedurally barred.

the same language he uses here, that the superior court erred "by declining to deduct payments to Richard Wagner's pre-existing creditors prior to determining Gregory Wagner's share" when it "took the creditor payments (Weeks) from Richard's share of the royalties, instead of allocating payments to the creditors first and then following its previous calculations to distribute the remainder." We analyzed this argument in *Wagner II* and rejected it because the trial court's "calculation mirrored the jury's findings and because the trial court plainly stated, in both its November and December 2005 orders, that it would calculate amounts due Gregory without regard for the Weeks Foundation's claims."[21] We concluded that "calculating the amount due Gregory without deducting amounts owed to Richard's bankruptcy creditors, particularly the Weeks Foundation" is not inconsistent with the judgment for specific performance.[22] Thus, because we have already considered and decided this issue, albeit in the context of Richard's appeal from a different superior court order, Richard's argument in this regard is barred by the doctrine of issue preclusion, or collateral estoppel.[23]

But even if Richard's argument were not collaterally estopped, it would nonetheless fail. Richard complains that the royalty income should have been allocated to his creditors first (including, he argues, to him, seeing as he has bought out several of his creditors), with only the remainder then allocated between him and Gregory. But that is simply not what the 2005 judgment for specific performance requires. The superior court explicitly found that the agreement between Richard and Gregory did not take into account the claims of Richard's creditors other than Northrim Bank. The superior court thus ordered that the amount Richard owed Gregory each month would be determined based upon the total monthly royalty income minus only Richard's obligation to Northrim Bank. The superior court followed this for-

mula in determining Richard's arrears for the February 2008 order.

Accordingly, we affirm the superior court's February 2008 order.

### B. The Superior Court Did Not Err in Denying Richard's Motion for Return of Funds (Appeal S–13175).

Richard also appeals from the May 2008 order denying his motion for return of funds. Richard contends that the clerk of court, who was acting as the escrow agent distributing Richard's royalty income according to the 2005 judgment for specific performance, should have paid him the funds allocated to him as the assignee of the claims of two of his bankruptcy creditors instead of paying those funds directly to Gregory under Gregory's writ of execution. He thus contends that the superior court should have granted his motion requesting the return of those funds.

Richard makes three arguments as to why the clerk of court should not have honored Gregory's writ of execution: (1) "at the time the writ of execution was served, the clerk [of court] was not in possession of money 'belonging' to Richard," nor was the clerk of court " 'indebted' to" Richard, meaning that the writ of execution did not obligate the clerk of court to pay the funds to Gregory under AS 09.40.040 (emphasis omitted); (2) the clerk of court "had a conflict of interest in acting both as an escrow agent and in issuing writs of execution on the same funds over which the [c]lerk was charged with a fiduciary duty to protect and distribute according to the Court's final judgment"; and (3) the superior court "effectively changed the material terms of the Chapter 11 [bankruptcy] plan ... without obtaining permission from the United States Bankruptcy Court for the District of Alaska."

The last of these three arguments duplicates precisely the inadequately briefed and procedurally barred argument discussed above in our treatment of appeal S–13055.

---

21. 205 P.3d at 310.

22. *Id.*

23. *See McElroy v. Kennedy*, 74 P.3d 903, 907 (Alaska 2003) ("[I]ssue preclusion, or collateral estoppel, renders an issue of fact or law which has already been decided by a court of competent jurisdiction conclusive in a subsequent action between the same parties, whether on the same or a different claim.").

We dispose of it in the same manner. Richard's other two arguments lack merit. As the superior court noted in denying Richard's motion, "there is no statutory or case law which supports Richard Wagner's untimely request for an additional exemption from execution."

### 1. It was proper for the clerk of court to pay Gregory, under Gregory's writ of execution, royalty distributions allocated to Richard.

■ Richard's bankruptcy plan provided for the payment of Richard's debts to various creditors. Richard has since settled with some of these creditors, meaning that the royalty distributions owed to them under the bankruptcy plan were assigned to Richard. In crafting its 2005 judgment for specific performance, the superior court did not disturb this arrangement, providing that Richard would be allocated and paid the distributions owed to the bankruptcy creditors whose claims he had purchased.

But Richard owed Gregory a substantial sum in back payments on their contract under both the initial damages judgment and the judgment for specific performance. Gregory obtained successive writs of execution for the arrears he was owed. Pursuant to one of Gregory's writs, the clerk of court, who had received Richard's royalties as the escrow agent under the judgment for specific performance, distributed to Gregory the share of the royalties that Richard was owed as the assignee of two of his bankruptcy creditors' claims. Richard now argues that by distributing those funds to Gregory rather than Richard, the clerk of court violated the obligation to obey the 2005 judgment for specific performance.

Alaska Statute 09.40.040 requires that "[a]ll persons having in their possession personal property belonging to the [debtor] or owing a debt to the [debtor]" must honor a creditor's writ of execution.[24] Richard contends that "at the time the writ of execution was served" the clerk of court "was not in possession of money 'belonging' to Richard Wagner," and was not " 'indebted' to" Richard (emphasis omitted). He argues that this means that "pursuant to AS 09.40.040 the clerk was not under any duty to pay Gregory Wagner under the writ of execution." Richard's position thus seems to be that his interest in the royalties flowing into the escrow account managed by the clerk of court was not subject to execution by Gregory and should have been paid to Richard.

But the single case Richard cites undermines his position. In *von Gemmingen v. First National Bank of Anchorage* we rejected the argument that a debtor's interest in certain escrow accounts was not property subject to execution because no proceeds were held in the accounts at the time of levy.[25] We held that " 'property' liable to execution includes not only funds within named escrow accounts, but also the rights of and duties owed to judgment debtors pursuant to the terms of those accounts," and that "[f]unds deposited in escrow accounts then subject to a valid levy are encumbered at the time of deposit."[26] Thus any interest Richard held in the royalties flowing into the escrow account managed by the clerk of court was subject to Gregory's writ of execution, and the clerk of court acted properly under AS 09.40.040 in honoring that writ and paying the funds to Gregory rather than Richard.

### 2. The clerk of court did not have an impermissible conflict of interest.

■ Richard also argues that the clerk of court "had a conflict of interest in

---

**24.** AS 09.40.040 provides:
All persons having in their possession personal property belonging to the defendant or owing a debt to the defendant at the time of service upon them of the writ and notice shall deliver, transfer, or pay the property or debts to the peace officer, or be liable to the plaintiff for the amount of the property or debts until the attachment is discharged or a judgment recovered by plaintiff is satisfied. Debts and other personal property may be delivered, transferred, or paid to the peace officer without

suit, and the receipt of the officer is a sufficient discharge.
See also *von Gemmingen v. First Nat'l Bank of Anchorage*, 789 P.2d 353, 354 n. 2 (Alaska 1990) ("Alaska Statute 09.40.040, which defines third party liability for improperly resisting attachment, . . . applies to writs of execution.").

**25.** *Id.* at 354.

**26.** *Id.* at 355–56.

acting both as an escrow agent and in issuing writs of execution on the same funds over which the [c]lerk was charged with a fiduciary duty to protect and distribute according to the Court's final judgment." But this argument is inadequately briefed, as it is contained in a single conclusory sentence, without citation to any authority.[27] Moreover, it was not raised in his pleadings below, and "[a]s a general rule, an issue that was not raised in the trial court will not be considered on appeal." [28]

Accordingly, we affirm the superior court's May 2008 denial of Richard's motion for return of funds.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's decisions in all respects in both appeals.

---

**27.** *See supra* note 17.

**28.** *Pierce v. Pierce,* 949 P.2d 498, 500 (Alaska 1997).